UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FRANK ANTHONY,

               Plaintiff,

    -against-

GE CAPITAL RETAIL BANK,

              Defendant.
------------------------------------------------------------X

Case No. 14-CV-2809

Honorable Andrew L Carter, Jr.

## 1st Amended Complaint

COMES NOW, the Plaintiff Frank Anthony complaining of the Defendant as follows;

### INTRODUCTION

1.     This action is an action brought by the Plaintiff for violation of the Fair Credit Reporting Act, 15 U.S.C. §1681, Fair Debt Collection Practices Act, 15U.S.C.§1692, Telephone Consumer Protection Act 47 U.S.C sec 227, Truth-In Lending Act 15 U.SC. 1601, New York General Business Law 349, Intentional Infliction of Emotional Distress, Freedom of Information Request 5 USC 552.

### I. THE PARTIES

2.     Plaintiff "Frank Anthony" is now and at all times relevant to this action an American National. Plaintiff(s) s are "consumers" as that term is defined within 15 U.S.C.§1692a(3).

3.     Defendant "Synchrony" is a federally chartered industrial bank (charter # 715044). It has a principle place of business located at 170 WEST ELECTION ROAD Suite 125 Draper, UT 94020.

### II. JURISDICTION AND VENUE

4.  The US District Court Southern District of New York has jurisdiction Pursuant to 15 U.S.C. §1692 et, al, and 15 U.S.C.§1681p et, al, and the court has Jurisdiction over Plaintiffs tort state claims. Venue is proper as the occurrences which give rise to this action took place in the state of New York; therefore venue is proper in the US District Court Southern District Court of New York

### III. FACTUAL ALLEGATIONS

5.  Synchrony (formerly GE Capital Retail Bank) is a federally charted bank subject to 38th congress public law 13 stat 99-118 (National Bank Act) prima facie evidence listed at title 12 of United States code.

6.  Inside the provision of the national bank act directors of banks have taken an oath not to violate any provision of that act which is registered with the comptroller of currency. (section 1 pg. 100 38th congress Public law 13)

7.  The nature in how banks are supposed to commence business is governed by this congressional act, and the law states "Banks cannot make loans on the security of the shares of its own stock."(section 35 page 110 38th congress), Banks can only loan money on personal security ( section 8 page 101 38th congress)

8.  If directors knowingly violate any provision of the bank act, or knowingly permit any of the officers, agents or servants of the association the director shall be held liable. (section 53 page 116 38th congress volume 13)

9.  As depositors of public money defendant Synchrony Bank is financial agent of the federal government (section 45 page 113 38th congress volumes 13). Being employed as financial agents of the government makes synchrony a federal agency defined in 5 USC sections 552 and subject to freedom of information request)

10.     Each agency, in accordance with published rules, shall make available for public inspection and copying copies of all records, regardless of form or format, which have been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records

11.     Plaintiff obtained a copy of his credit report on or about October 2013 and a copy of the GECRB Credit Card Master Prospectus as filed with the SEC. Exhibit A

12.     On or about October 2013 Plaintiff noticed Synchrony hereinafter "Defendant" was reporting an account ending in 4157 with a credit limit of 2,500 and opening date of 7/2102.

13.     Plaintiff in an attempt to find out true nature of the account ending 4157 sent notice of dispute/Freedom of Information request along with debt disclosure interrogatories defendant. See Exhibit B (FOI/debt disclosure statement)

14.     Defendant responded stating they are in fact the original credit provider of the account however due to record retention the **application no longer exists**. See Exhibit C

15.     Defendant also included billing statements as an attempt to verify the debt, but failed to provide accounting, or satisfy any request of information regarding status, nature of the account created, or documentation of origin.

16.     The Plaintiff followed up the Freedom of Information Request with another dispute letter and debt disclosure interrogatives that were not responded to by defendant. (See Exhibit D)

17.     On or about December 2013 Plaintiff sent directly to defendant a notice of administrative default and a notice of cancellation of the account ending 4157. (See Exhibits E,F)

18.     Plaintiff then filed an FTC Affidavit for Identity Theft/ Fraud along with the Exhibits the plaintiff disputed for acct ending in 4157 with all three credit bureaus. See exhibit G

19. TransUnion, Equifax and Experian received notice of dispute from the plaintiff with all of the documentation that had already been received by the defendant; who in turn forwarded the dispute with along with all relevant information to the defendant for reinvestigation.

20. Defendant responded with a letter, and a box checked off stating "customer benefited from the account and they have confirmed verifiable payment for the account ending 4157. Defendant again failed to investigate the merits of plaintiff dispute and consider all relevant documentation. See Exhibit H

21. **On or about March 2014 the Acct ending in 4157 was deleted** from plaintiff's credit file from all three Credit Reporting Agencies because the alleged debt was unverifiable, inaccurate, and fraudulent after received the notice of dispute. See Exhibit I

22. On or about March 2014 defendant sent an unsolicited new credit card to the plaintiff for an account ending 2094. See Exhibit J

23. On or about March 2014 plaintiff received debt collection statement for a debt owed on a new account ending in 2094 for a payment due April 15th; which was never accepted, opened, or utilized, and **acquired in default**. See Exhibit J

24. On or about March 2014 the defendant reinserted the deleted debt for an account ending 4157; as a balance transfer into the unauthorized, unsolicited, and unused account ending 2094 without notice or consent to the plaintiff. See Exhibit J

25. The plaintiff immediately disputed the new fraudulent account ending 2094 with all 3 credit reporting agencies.

26. On April 11th Plaintiff sent notice of dispute & Affidavit of Affirmation directly to the defendant questioning the nature of account being reported on the plaintiffs credit file ending in 2094. See Exhibit K

27. Defendant replied to the dispute for account ending 2094 with a letter that had two boxes checked off; stating that "customer benefited from the account and they have confirmed verifiable payment" See Exhibit L

28. Plaintiff disputed acct ending in 2094 with all three credit bureaus along with all prior relevant communications sent to defendants prior with acct ending in 4157.

29. Credit bureaus received dispute for acct ending in 2094 and all relevant information included with dispute and forwarded information to defendant for reinvestigation.

30. The investigation result from all three credit bureaus for acct ending in 2094 came back verified. Defendant from December 2013 through August 2014; has reported an open account with a limit of $2500 and origin of 7/2012.

31. Plaintiff had filed a complaint with the consumer financial protection bureau for the account ending in 2094 being furnished by the defendant. See Exhibit M

32. The CFPB reported back to plaintiff the for accts ending in 4157 and 2094 that the reinvestigation of the acct was predicated on the defendant verifying the social security number, address, and name of plaintiff see Exhibit M.

33. Upon information and belief defendant failed to conduct a reasonable investigation for acct ending in 2094; by simply checking a box and verifying name, address and social security number.

34. Upon Information and belief that defendant failed to consider all relevant information defendant received with dispute and failed to reinvestigate the origin of an ending 2094.

35. Plaintiff asserts he has never made a payment, received benefit, or filled out an application requesting credit authorizing for account ending in 2094.

36. Plaintiff asserts he has maintained a security alert, promotional credit opt-out, and fraud alert with all three major credit bureaus since January 2014.

37. Upon Information and belief defendant is neither a creditor nor lender and is unable to verify any account history for acct ending in 2094.

38. Upon Information and belief Defendant failed to provide the true identity of the real creditor prior to issuing acct ending 2094.

39. Upon information and belief defendant has opened the acct ending in 2094 without authorization from plaintiff and has failed to disclose (1. Conditions under which finance charge may be imposed, 2. Method determining how finance charge will be imposed, 3. Method determining amount of finance charge or identification of other charges that may be imposed as part of the open end credit plan.

40. Upon information and belief the credit card account ending in 2094 was not issued in response to credit card application, was a not a renewal or substitution for an accepted card.

41. Upon information and belief the discovery of this truth in lending violations are within statutory limitations of one year.

42. Upon information and belief every year defendant required registers a prospectus with the Securities and Exchange Commission for potential investor for financial products.

43. Upon information and belief defendant does originate co -branded credit card accounts through credit applications, but sells receivables of payments made for credit card accounts under receivables transfer agreement to RFS funding trust. See exhibit N (Page 21 of prospectus supplement)

44. Upon information and belief RFS Funding trust uses "funds to purchase receivables from the bank under an intercompany line of credit with RFS Holding, Inc.," see exhibit N (page 21 in prospectus)

45. Upon information and belief in the transfer agreement the defendant represents in the bank receivables sale agreement that the receivables are "accounts" for purposes of the UCC see exhibits O (Page 22 of prospectus)

46. Defendant repeatedly represents to plaintiff in mail correspondence that it owns alleged acct ending in 4157 & 2094.

47. Upon information and belief defendant has failed to disclose to defendant all parties of interest of alleged account. Furthermore defendant has no rights title or interest to any payments of alleged accts ending in 4157 & 2094. (See exhibit N)

48. Upon information and belief Defendant has misrepresented the fact that they in fact are the source of funds for alleged acct ending in 4157 and 2094.

49. Upon information and belief Defendant has provided no value or consideration to plaintiff but has attempted to induce plaintiff through misrepresentation of fact they are the source of funds for to acct ending in 4157 & 2094

50. Any payments that might have been made for 4157 is because plaintiff entrusted in defendants misrepresentation, and was induced based on that material fact and as result was injured and has suffered credit denials, mental anguish and severe emotional distress.

51. Upon Information and belief Defendant is just a mere servicer who uses instrumentality of interstate commerce and the mail in business and their principal purpose of which is to collect debts, and defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

52. Upon information and belief defendant is unable to provide documentation or show accuracy of amount allegedly owed for the account ending 2094.

53. Upon information and belief defendant is unable to provide an agreement that authorizes or proves a debt exist.

54. Upon information and belief defendant has not suffered any financial injury.

55. Upon information and belief at all times defendant knew acct ending in 2094 was inaccurate, could not be verified, and continued to report acct ending in 2094 with conscious and reckless disregard of plaintiffs rights.

56. Upon Information and belief all actions taken by the Defendant were done willfully, with malice, intent to harm the Plaintiff, and with reckless disregard for the law.

57. Upon information and belief, through its subsidiaries and agents, Defendants employs thousands of persons at call Centers throughout the country and overseas. These calling centers use automatic telephone dialing system that have capacity to store or produce random or sequential numbers.

58. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA regulates, interalia, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of auto dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party systems and computerized account information to track, record, and maintain the millions of consumer debts serviced by Synchrony

59. 47 U.S.C. 227(b) states in pertinent part: (b) Restrictions on use of automated telephone equipment (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call

(other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; (3) Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph.

60. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

61. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed and prerecorded message calls to a wireless number by a creditor or on behalf of a creditor are

permitted only if the calls are made with the "prior express consent" of the called party. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL65485 (F.C.C.) (2008). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." FCC Declaratory Ruling, 23 F.C.C.R. at 564-65 (¶10).

62. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiffs gave Synchrony their express consent to call their cell phones within the meaning of the statute. See FCC Declaratory Ruling, 23 F.C.C.R. at 565

63. Plaintiff never gave prior express consent to receive calls on his cellular telephone for acct ending in 2094.

64. Defendant has called plaintiff cellular phone 13 times within a week without prior express consent from automated telephone dialing system that has the capacity to store and produce telephone numbers to be called using random or sequential number generator. See Exhibit P

65. Defendant would call plaintiff cell phone several times to harass during work hours 8am - 6 pm.

66. Plaintiff temporarily blocked defendant harassing automated telephone calls because overwhelming attempts reach plaintiff in regards to acct ending in 2094.

67. Defendant refuses to provide a record of all calls made to the plaintiff.

68. Defendant left voicemails on 4/7/2014, 4/6/2014, 4/5/2014, and 2/9/2014 on the plaintiff's cell phone. The voicemail recorded messages on all; four dates states "This is an

important message from GE Capital Retail Bank regarding Gap Credit Services Please call today at 1 866 419 0964 or visit our website at eservce.gap.com our mailing address is 170 West Election Road Suite 125 Draper, Utah 84020. This is a recording" See Exhibit P

69. In attempt to deal with erroneous reporting plaintiffs performance at work has declined, plaintiff has loss sleep unsure if plaintiff would qualify to rent or buy housings based on derogatory reporting.

70. Upon information and belief defendant knew inaccurate derogatory reporting, deceptive practices would have an adverse effect on plaintiff emotional state. Defendant still continued to act reckless and exceed the bounds of decent behavior.

71. Upon information and belief defendant blatantly lied in regards to acct ending in 2094 "stating that the account have verifiable payment and the customer benefited".

72. Upon Information and belief defendant is only able to produce account statements as of March 2014 for the account ending 2094, yet is reporting to all CRA the account was first opened in July 2012.

73. Upon information and belief the Defendant has willfully reported an open and accepted account; disregarding the Plaintiff's demand of closure, notice of default, and cancellation from the plaintiff on or about December 2013. See exhibit E and F.

74. On June 26, 2014 defendant sent an investigation result letter for the account ending 4157; merely with boxes checked, over 3 months after the account was disputed, and two months after complaint filing a complaint against defendant. See Exhibit Q

**First Cause of Action**
**(Violation of New York General Business Law 349)**

75. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

76. GBL section 349 proscribes "deceptive acts or practices in the conduct of any business trade or commerce or in furnishing of any service in this state."

77. GBL section 349 provides that "any person who has been injured bring an action in his own name to enjoin such unlawful act or practice" as well as to obtain actual damages, or fifty dollars whichever is greater

78. Plaintiff is a consumer and is allegedly owes a debt that erected from consumer oriented transaction.

79. Plaintiff sent several notices questioning that nature, status, character, and defendant's contractual relationship with plaintiff in regards to acct ending in 2094.

80. Defendant has failed to disclose any requested information regarding alleged debt or provide any sensible computation of amounts alleged to be due or owing.

81. Defendant intentional acts of providing erroneous, fabricated amounts allegedly due and or owing, opening and account and issuing a card in plaintiffs name without knowledge or consent. Misrepresenting the fact they are the credit provider/lender, or have any interest in payments to acct ending 2094 to coerce payment and unjustly enrich themselves.

82. Synchrony actions as set forth hereinbefore, have caused emotional distress, confusion, anxiety, embarrassment, mental anguish, loss of credit opportunity, decrease in credit limit and denial of credit to plaintiff.

83. By virtue of harmful results of its activities synchrony actions as set forth hereinbefore have caused both consumer injury and harm to public interest.

84. A set forth herein, as a result of synchrony's violation of GBL section 349, plaintiff was economically harmed to his detriment, and is entitled either actual damage in an amount to be show according to proof, or to damage in the amount a $50 pursuant to to GBL section 349(H) whichever is greater.

85. Therefore plaintiff is entitled to relief for actual damages.

## Second Cause of Action
## FAIR CREDIT REPORTING ACT
### (Violation of 15 USC 1681s-2(B), 15 U.S.C 1681q)

86. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

87. Synchrony violated the Fair Credit Reporting Act, 15 U.S.C section 181s-2(B) failing to properly investigate plaintiffs dispute of acct ending in 2094, by failing to review all relevant information regarding acct ending in 2094, by failing to accurately respond to all three credit bureaus, by failing to correctly report results of an accurate investigation to TransUnion, Equifax and Experian credit reporting agency; and by failing to permanently and lawfully correct its own internal record to prevent the re-reporting of the synchrony's representations to the consumer reporting agencies.

88. Plaintiff had a security block and had opted out with all three major credit bureaus for unsolicited credit cards

89. Synchrony violated Fair Credit Reporting Ace 15 U.S.C section 1681q by obtaining a consumer report under false pretenses for acct ending in 2094.

90. As a result of this conduct, action and inaction of Synchrony, the plaintiff suffered damages by los of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional distress, mental anguish, humiliation and embarrassment of credit denials.

91. Synchrony's conduct, action and inaction were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. section 1681n. In the alternative, it was negligent entitling plaintiff to recover actual damages under 15 U.S.C 1681o.

## THIRD CAUSE OF ACTION
## TRUTH IN LENDING
### (Violation of 15 U.S.C section 1642 & 1631)

92. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

93. Synchrony violated 15 U.S.C 1642 by issuing a credit card to plaintiff that was not in response to a credit card application was not renewal of an existing card or a substitution of an existing accepted card.

94. Synchrony violated 15 U.S.C 1631 by issuing an unsolicited credit card acct ending in 2094 to plaintiff without prior disclosure, (1. Conditions under which finance charge may be imposed, 2. Method determining how finance charge will be imposed, 3. Method determining amount of finance charge or identification of other charges that may be imposed as part of the open end credit plan.

95. As a result of defendants conduct plaintiff has suffered damages by los of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional distress, mental anguish, humiliation and embarrassment of credit denials.

96. Therefore plaintiff is entitle to actual damages pursuant to 15 U.S.C 1640 & twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures.

### Fourth Cause of Action
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C 227 Negligent & Willful)

97. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

98. The foregoing act and omissions of Synchrony constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C.227 et seq.

99. Plaintiff never provided express consent to defendant to call cellular phone regarding acct ending in 2094

100.    As a result of synchrony's negligent violations of the TCPA, Plaintiffs entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. 227(b)(3)(B).

101.    The forgoing act and omissions of synchrony constitute numerous and multiple violations of the TCPA, including but not limited each of the above citied provisions of 47 U.S.C 227(b)(3)(B).

102.    As a result of synchrony's willful violations of the TCPA Plaintiff is entitled to $1500 in statutory damages for each and every call placed in violation of the statue pursuant to 47 U.S.C. 227(B)(3)(C).

## FIFTH CAUSE OF ACTION
### (Intentional & Negligent Infliction of Emotional Distress)

103.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

104.    Defendant act of re-reporting debt disguised with new account number knowing alleged account could not be verified and is inaccurate is extreme and outrageous.

105.    Defendants act of issuing new credit card without authorization and reporting it negatively on plaintiffs credit file know it had been previous deleted is extreme and outrageous.

106.    Defendant claiming to be source of the funds knowing they provided no value and misrepresenting status of a creditor is extreme and outrageous.

107.    Defendant calling plaintiff cell phone multiple times to the point plaintiff had to block defendant from calls from an automated dialing system was extreme and outrageous.

108.    As a result of defendants extreme and outrageous behavior plaintiff had suffered severe and extreme emotional distress.

109.    Therefore plaintiff is entitled to actual damages for mental anguish, anxiety, humiliation loss of sleep, embarrassment for amount to be proven.

## SIXTH CAUSE OF ACTION
### Fair Debt Collection Practices Act
**(Violation of 15 U.S.C. 1692(D),(E10),(F),(G(J))**

110. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

111. Plaintiff is a consumer defined at 15 USC 1692(a)(3), defendant is a debt collector defined and 15 USC 1692(a)(6), Defendant is trying to collect a debt defined at 15 USC 1692(a)(5).

112. Defendant uses instrumentality of interstate commerce and the mails in business and their principal purpose of which is to collect debts, and defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

113. Plaintiff is least sophisticated consumer and 15 USC 1692g requires defendant to provide Plaintiffs with verification of the alleged debt once received. 15 USC 1692g(5)(b) requires defendants to cease all collection activity until the debt collector obtains verification of the alleged debt. Defendants and each of them has failed to provide one scintilla of proof of their alleged debt. However defendants continued to make attempts at collection of the alleged debt through erroneous credit reporting and excessive phone calls.

114. Defendants violated the FDCPA, and caused damages to Plaintiff by their failure to comply with the Act. Defendant's violations include, but are not limited to the following; a. Defendant violated §1692d of the FDCPA by engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged debt.

115. Defendants were fully aware that each of them were/are unable to provide a Performance contract executed by Plaintiffs, whereby Plaintiffs are obligated to defendants.

116. Defendant Violated 15 USC 1692j which says (a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating

117. Defendant use false misrepresentations and deceptive means to collect a debt.

118. Therefore defendants are liable to Plaintiffs for damages to their consumer Credit reports which resulted in higher emotional, mental stress, insomnia, embarrassment, loss of sleep, anxiety, And other related damages due to defendant's acts.

### Seventh Cause of Action
### Freedom Of Information Request
### (Violation of 5 USC 552(d)

119. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

120. As a depositor of the public money defendant is a financial agent of the federal government.

121. Defendant is federal agency defined at 5 USC 551(a)

122. Plaintiff is an individual defined at 5 USC 551(a)

123. Defendant has authority to commence business through comptroller of currency, where defendant registers its business certificate.

124. Defendant has failed to provide copies of all records, regardless of form or format, which has been released to any person under paragraph (3) and which, because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records.

125. As result have injured plaintiff causing mental anguish, emotional distress, humiliation, loss of sleep and anxiety

126. Therefore plaintiff is entitled to actual damages.

### Demand for relief

127. Wherefore plaintiff demand statutory damages for FCRA $18,000 six months of negative reporting for each major credit bureau, FDCPA $1,000, TCPA $18,500 for 1 negligent call and 12 willful calls to cellular phone, TILA $,5000 for a total of $42,500

128. Actual damages for amount determined by jury

129.    Punitive dames for amount determined by jury

130.    Plaintiff reserves the right to amend and or plead any additional causes of action based material facts made available in response to the complaint and in discovery.


Dated: 8.4.2014,


BY: _____
CONSUMER, Pro Se Plaintiff